FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 03, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBERT M., | NO:  1:20-CV-03225-LRS |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary judgment.  ECF Nos. 14, 16.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by Attorney D. James Tree.  Defendant is

---

[1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.  No further action need be taken to continue this suit.  *See* 42 U.S.C. § 405(g).

ORDER ~ 1

represented by Special Assistant United States Attorney Jeffrey E. Staples. The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 16, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 14.

### JURISDICTION

Plaintiff Robert M.[2] protectively filed applications for Social Security Disability Insurance (DIB) and Supplemental Security Income (SSI) on August 5, 2014, Tr. 77, 106, alleging an onset date of October 14, 2013, Tr. 183, 187, due to confusion – electrocuted, disorientation, memory problems, and body shakes, Tr. 218. Plaintiff's applications were denied initially, Tr. 112-14, and upon reconsideration, Tr. 119-23. A hearing before Administrative Law Keith Allred ("ALJ") was conducted on March 30, 2017. Tr. 50-76. Plaintiff was represented by counsel and testified at the hearing. *Id*. The ALJ also took the testimony of vocational expert Beckie Hill. *Id*. The ALJ denied benefits on July 31, 2017. Tr. 20-40. The Appeals Council denied review on June 14, 2018. Tr. 1-5. Plaintiff requested judicial review of the ALJ decision by this Court on July 27, 2018. Tr. 771. This Court remanded the case back to the Commissioner on June 18, 2019.

---

[2]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 2

Tr. 752-68.  The Appeals Council remanded the case back to the ALJ on July 15, 2019.  Tr. 773-76.  A hearing was held before ALJ Richard Hlaudy on May 6, 2020.  Tr. 714-51.  The ALJ took testimony from Plaintiff and vocational expert Michael Swanson.  *Id*.  On August 11, 2020, the ALJ found Plaintiff was not disabled prior to September 7, 2017, but was disabled as of September 7, 2017.  Tr. 681-705.  The Appeals Counsel did not assume jurisdiction under 20 C.F.R. §§ 404.984(a), 416.1484(a).  Therefore, it became the final decision of the Commissioner.  The matter is now before this Court pursuant to 42 U.S.C. §§ 405(g).  ECF No. 1.

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 51 years old at the alleged onset date.  Tr. 183.  The highest grade Plaintiff completed was the tenth grade.  Tr. 219.  Tr. 325.  Plaintiff worked as an electrician from 1997 to 2013.  Tr. 219.  He was injured by electrocution in 2013.  Tr. 342.  At application, he stated that he stopped working on October 14, 2013, because of his conditions.  Tr. 218.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c),

416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  Tr. 684.  At step two, the ALJ found

ORDER ~ 7

that Plaintiff had the following severe impairments: primary headache disorder; an organic brain disorder secondary to an electrocution injury; anxiety; and depression.  Tr. 684.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meet or medically equaled the severity of a listed impairment.  Tr. 686.  The ALJ then found that Plaintiff had the RFC to perform light work as defined in 20 CFR §§ 404.1567(b), 416.967(b) with the following limitations:

> occasional climbing of ramps or stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, or crawling; avoidance of any exposure to hazardous machinery or unprotected heights; and the claimant is able to perform simple, routine tasks with superficial interaction with co-workers and the public.

Tr. 688.  At step four, the ALJ identified Plaintiff's past relevant work as an electrician and found that he could not perform this past relevant work.  Tr. 702.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform prior to September 7, 2017, including courier, office helper, and mail room clerk.  Tr. 702-03.  The ALJ found that as of September 7, 2017, Plaintiff's age category changed, and Plaintiff was disabled under Medical-Vocational Rule 202.02.  Tr. 704.  On that basis, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act prior to September 7, 2017, but was disabled as of September 7, 2017.  Tr. 704.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him DIB under Title II and SSI under Title XVI of the Social Security Act. ECF No. 14. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly addressed the medical opinions; and

2. Whether the ALJ properly addressed Plaintiff's symptom statements.

**DISCUSSION**

**1.    Medical Opinions**

Plaintiff challenges the ALJ's rejection of the medical opinions of Gary Allen Stobbe, M.D., John Gilbert, Ph.D., Jane Thompson, Ph.D., and Cari Cowin, ARNP. ECF No. 14 at 11-22.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id*.

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by

substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Conversely, "[i]f a treating or examining doctor's opinion is contradicted by

another doctor's opinion, an ALJ may only reject it by providing specific and

legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v.*

*Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).  The specific and legitimate standard

can be met by the ALJ setting out a detailed and thorough summary of the facts

and conflicting clinical evidence, stating her interpretation thereof, and making

findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ is

required to do more than offer his conclusions, he "must set forth his

interpretations and explain why they, rather than the doctors', are correct."

*Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### A.    Gary Allen Stobbe, M.D.

On May 19, 2014, Dr. Stobbe evaluated Plaintiff and stated that he

"expect[s] that this will take some time, considering it has been a year since the

injury, and I would expect another 6 to 12 months before we could expect him to

be able to go back to work."  Tr. 360.  The ALJ assigned the opinion only "some

weight" because "Dr. Stobbe was speaking in context to the claimant's ability to

return to his position as an electrician as he noted the claimant's position in the

prior sentence."  Tr. 698.

Plaintiff argues that this is not supported in the record because Dr. Stobbe

had only discussed Plaintiff's history as an electrician as a framework for helping

him understand his injury.  ECF No. 14 at 12.  Dr. Stobbe's opinion is ambiguous

as to whether he was opining that Plaintiff was limited from all work for six to

twelve months or only his work as an electrician.  Tr. 360.  In cases of ambiguity,

the Court is to give deference to the ALJ's determination: "The court will uphold

the ALJ's conclusion when the evidence is susceptible to more than one rational

interpretation." *Tommasetti*, 533 F.3d at 1038.  Here, the ALJ found that Plaintiff

was not able to return to his past relevant work as an electrician.  Tr. 702.

Therefore, the ALJ's determination is not inconsistent with the ALJ's

determination.

**B.    John Gilbert, Ph.D.**

On April 23, 2015, Dr. Gilbert reviewed the medical evidence in the record

when Plaintiff requested Reconsideration of his claim.  Tr. 97-99.  He provided the

following narrative opinions: (1) Plaintiff "has the capacity to understand and

remember simple instructions but would struggle with more complex instructions

at times," Tr. 102; (2) Plaintiff "has the capacity to carry out simple instructions.

His anxiety and depression would interfere with concentration and persistence that

would create some limit in his ability to complete a normal workday or

workweek,"  Tr. 102; (3) Plaintiff "has the capacity to interact with others most of

the time.  His anxiety would interfere with working closely with coworkers,

supervisors, and the public at times," Tr. 103; and (4) Plaintiff "can adjust to

modest change, due to limited stress tolerance," Tr. 103.

The ALJ gave the opinion considerable weight, but rejected the opinion that concentration and persistence would limit his ability to complete a normal workday or workweek for two reasons: (1) that Plaintiff improved with subsequent treatment; and (2) Plaintiff was not compliant with anxiety and depression medication while consuming marijuana.  Tr. 700.

Here, Dr. Gilbert is not a treating or examining physician, but only a reviewing physician.  Therefore, the Commissioner may reject a portion of the opinion by reference to specific evidence in the medical record.  *Sousa v. Callahan,* 143 F.3d 1240, 1244 (9th Cir. 1998).  In the ALJ's conclusion that Plaintiff improved with treatment, the ALJ did not reference any medical evidence in the record.  Tr. 700.  However, the ALJ did reference medical evidence in support of his finding that Plaintiff was not compliant with medication.  *Id*.  The ALJ referenced medical records form February 26, 2016, stating that "[w]e took some time to discuss medication management.  He really does not like the idea of taking antidepressants," Tr. 616, and July 13, 2016, stating that "[h]e is not taking meds routinely," Tr. 627.  None of the evidence referenced discussed Plaintiff's continued use of marijuana.  Here, the ALJ has provided a reference to specific evidence in the medical record to support his determination that Plaintiff was not compliant with anxiety and depression medication.  Therefore, the ALJ's failure to reference specific medical evidence in support of his conclusion that Plaintiff improved with subsequent treatment and continue using marijuana is harmless.

*See Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

### C.    Jane Thompson, Ph.D.

On March 9, 2015, and March 11, 2015, Dr. Thompson completed a neuropsychological evaluation and provided an evaluation report to Division of Disability Determination Services on April 7, 2015.  Tr. 455-84.  She completed extensive testing, Tr. 468-69, and diagnosed Plaintiff with generalized anxiety disorder with panic attacks, rule out agoraphobia, major depressive disorder, electrocution late effects, obstructive hydrocephalus, presence of cerebral spinal fluid drainage device, late effects of multiple concussions, and mild neurocognitive disorder due to multiple etiologies with behavioral disturbance, Tr. 481.  Dr. Thompson provided the following functional opinion:

> At this point in time, due to his severe anxiety and probable agoraphobia, along with his attention, memory, information processing speed, and executive function deficits, I do not believe [Plaintiff] is capable of gainful employment in any capacity.  I also do not believe he is capable of managing his funds, but would require a payee.  If he is able to get rehabilitative services including both cognitive rehabilitation and psychotherapy, I feel it is possible that he might be able to return to work in the future.

Tr. 455.  Dr. Thompson stated that Plaintiff's "executive function testing revealed areas of weakness involving processing speed, multitasking, a tendency towards impulsive responding, a tendency to lose track of what he was doing, weak task

organization, and being unable to profit from constant feedback on his

performance." Tr. 474.  Dr. Thompson opined that Plaintiff's "tests of learning

and memory demonstrated that he is having difficulty with initial learning, delayed

recall, and recognition, no matter whether he is trying to learn in the auditory

modality or in the visual modality." Tr. 475.  He stated that testing found that

Plaintiff was "likely experiencing diffuse cognitive problems such as issues with

his memory, concentration, and low frustration tolerance."

The ALJ assigned the opinion mixed weight.  Tr. 698.  He rejected the

opinion that Plaintiff was incapable of gainful employment by stating that "[t]his

portion of the opinion invades the province of the Commissioner of Social Security

and is given no weight for that reason." *Id*.  He assigned some weight to the

portion of the opinion that Plaintiff would have more difficulty learning new

information that was visually presented, as opposed to spatial learning stating that

"[o]ther mental health professionals who have examined the claimant reached far

less severe conclusions, and so at some level Dr. Thompson's opinion is at odds

with the weight of the evidence regarding the claimant's functional capacity." *Id*.

Plaintiff asserts that the ALJ was required to meet the clear and convincing

standard to reject the portion of the opinion that Plaintiff could not perform gainful

employment.  ECF No. 14 at 16.  Defendant asserts that the opinion is

contradicted, so the ALJ was only required to meet the specific and legitimate

standard.  ECF No. 16 at 10.  Defendant points to the opinion of Dr. Toews, who

1  stated that Plaintiff had no difficulty maintaining attention and concentration for

2  the duration of the examination and had no difficulty remembering tests

3  instructions or test items.  ECF No. 16 at 10 *citing* Tr. 422.  Considering the

4  contradictory opinion of Dr. Toews regarding concentration and memory, Tr. 422,

5  the correct legal standard is the ALJ was required to meet was specific and

6  legitimate.

7      The ALJ met this standard when rejecting the opinion that Plaintiff was

8  incapable of gainful employment.  The Court acknowledges that the final

9  responsibility for deciding the issue of disability is reserved to the Commissioner

10  and the ALJ will not give "special significance to the source of an opinion on

11  issues reserved to the Commissioner."  20 C.F.R. §§ 404.1527(d), 416.927(d).

12  However, the Ninth Circuit has found that "reasons for rejecting a treating doctor's

13  credible opinion on disability are comparable to those required for rejecting a

14  treating doctor's medical opinion," and must meet the specific and legitimate

15  standard.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

16      The ALJ found that "Dr. Thompson did not provide an opinion regarding the

17  claimant's residual mental capacities, and therefore it is unclear how the claimant's

18  deficits related to an inability to work."  Tr. 698.  The Regulations state that "[t]he

19  better an explanation a source provides for a medical opinion, the more weight we

20  will give that medical opinion."  20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

21  Furthermore, the ALJ found that Dr. Thompson's "extreme assessment regarding

the claimant's capacity to work downplays the claimant's average or low average abilities in most mental functioning metrics, including auditory attention, attention to visual detail and rapid decision-making, sustained visual attention accurate (11F/17), etc." Tr. 698-99.  Inconsistencies between a provider's opinion and his report meets the specific and legitimate standard. *Bayliss*, 427 F.3d at 1216.  Here, the ALJ provided reasons for rejecting Dr. Thompson's opinion that Plaintiff was not capable of gainful employment, Tr. 698-99, and Plaintiff failed to challenge these reasons, ECF No. 14 at 15-16.  Therefore, Plaintiff waived any challenge to the reasons the ALJ provided. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (limiting review to those issues specifically raised in a claimant's briefing).  As such, the Court will not disturb the ALJ's treatment of Dr. Thompson's opinion.

### D.    Cari Cowin, ARNP

On May 22, 2015, Nurse Cowin stated that Plaintiff was "not employable." Tr. 596.  On October 21, 2015, Nurse Cowin stated "No work" as to Plaintiff's employability.  Tr. 606.  On February 1, 2016, Nurse Cowin repeated her statement of "no work."  Tr. 615.  On March 25, 2016, Nurse Cowin stated that Plaintiff's employability as "no work," and stated that this was "secondary to cognitive deficit he would not be employable in his field of injury which is electrician.  he [sic] could do less complicated work."  Tr. 619.  On April 15, 2016, Nurse Cowin stated that Plaintiff "is not able to work in this condition."  Tr. 621.  On October 12,

2016, Nurse Cowin completed written interrogatories asking if she concurred with Dr. Bachman's opinion that Plaintiff could not return to his prior work.  Tr. 631.  Nurse Cowin responded "yes" to the prompt "Do you concur with Dr. Bachman that this industrial injury aggravated [Plaintiff]'s prior medical condition?" and "Do you agree that [Plaintiff] has been unable to work due to the aggravation of his pre-existing condition?"  Tr. 631-32.  On October 19, 2016, Nurse Cowing again stated "No work" regarding Plaintiff's employability.  Tr. 633.  On December 21, 2016, Nurse Cowin repeated the employability finding of "No work" and stated that Plaintiff "certainly could not work well given his presentation in my office."  Tr. 643.

The ALJ stated that he considered the opinion.  Tr. 700.  However, he rejected that the opinion supported a preclusion from all work, stating that Nurse Cowin's "notes contained very little explanation for her opinions," and that Nurse Cowin was not aware of the medications Plaintiff was taking or that Plaintiff did not want to take anti-depressant medication.  Tr. 701.  The ALJ also drew attention to Nurse Cowin's March 25, 2016, opinion that Plaintiff could not return to his work as an electrician, but could perform other work.  *Id*.  The ALJ also found that the October 12, 2016, opinion on the worker's compensation interrogatories supported the conclusion that Plaintiff could not work as an electrician, but could perform other work.  *Id*.

A Nurse Practitioner is not an acceptable medical source in this case because

this case was filed prior to March 27, 2017.  20 C.F.R. §§ 404.1502(a), 416.902(a).

Therefore, the ALJ can reject Nurse Cowin's opinion with reasons germane to the

opinion.  *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Here, the ALJ has provided germane reasons.  First, the fact that she was

unaware of Plaintiff's anti-depressant medication use or noted Plaintiff's refusal to

take medication met the germane standard.  Dr. Cowin repeated that it was

Plaintiff's psychological impairments that prevented him from working.  Tr. 599,

603, 606, 608, 611, 613, 615, 619, 621, 625-26, 628-29, 633.  However, Plaintiff

refused medications.  Tr. 599, 616, 619, 629, 643.  He also struggled to provide an

accurate account of the type of medications he was taking or the amount.  Tr. 624-

26, 628, 633, 636, 639.  Therefore, there is substantial evidence to support the

ALJ's determination.

Additionally, the ALJ pointed to the inconsistency between her finding of

"no work" and her finding that Plaintiff could not perform work as an electrician,

but could perform less complicated work.  Tr. 701.  The ALJ interpreted the

interrogatories on October 12, 2016, as supporting a finding that Plaintiff could not

work as an electrician, but did not address the ability to preclude other work.  *Id*.

Internal inconsistencies in a physician's report can be relied upon by the ALJ in

rejecting an opinion.  *Bayliss*, 427 F.3d at 1216.  Therefore, Nurse Cowin's

opinion in that Plaintiff was precluded from his past work as an electrician, but

could perform less complicated work is inconsistent with her opinions of "No

work" before and after to March 25, 2016. As such, this reason meets the germane standard.

## 2.    Plaintiff's Symptom Statements

Plaintiff argues that the ALJ erred in the treatment of his symptom statements. ECF No. 14 at 18-21.

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Id*.

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).

The ALJ stated that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in

this decision." Tr. 695.  The ALJ gave two reasons for rejecting Plaintiff's symptom statements:  (1) the observations regarding Plaintiff's retained abilities were not consistent, Tr. 695; and (2) his daily activities were inconsistent with his reported limitations, Tr. 696.

The ALJ's first reason for rejecting Plaintiff's symptom statements, that the observations regarding Plaintiff's retained abilities were not consistent, is specific, clear and convincing.  An ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's testimony.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).  The ALJ found that "in terms of the claimant's alleged memory and concentration deficits, the evidence is not consistent regarding the claimant's retained ability." Tr. 695.  The ALJ then summarized the varying degrees of findings regarding Plaintiff's memory and concentration, Tr. 695-96, and concluded that "[t]he preponderance of the evidence shows this area of functioning to be a significant issue, but the aggregate of the evidence shows that it is not an utterly disability condition," Tr. 696.  Here, the ALJ set forth extensive evidence showing inconsistencies in Plaintiff's memory and concentration throughout the record.  Tr. 965-96.  Therefore, the ALJ's reason is supported by substantial evidence and meets the specific, clear and convincing standard.

The ALJ's second reason for rejecting Plaintiff's symptom statements, that they were inconsistent with Plaintiff's daily activities, is specific, clear and

convincing.  A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict his other testimony, or (2) "the claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination."  *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)). A claimant need not be "utterly incapacitated" to be eligible for benefits.  *Fair*, 885 F.2d at 603.

The ALJ found that Plaintiff's "daily activities of driving and shopping by himself and his ability to function at the hearing show that he retains a fair ability in this area." Tr. 696.  The ALJ then detailed the mental requirements of driving and shopping:

> Driving arguable [sic] requires even greater ability to focus, concentrate, and maintain pace than the minimal limitations of the claimant's ability to perform routine, simple tasks as noted in finding number five.  One must follow the driving laws while consistently responding to visual/spatial cues (i.e. braking, turning the wheel, speeding up/slowing down, using turn signals appropriately, communicating with other drivers when necessary, etc.).  Further, in order to shop without assistance, a person must navigate where items are in a store, evaluate pricing, evaluate quantity of items, and communicate with others at the store as necessary.  Again, any ability to perform such an action shows that the claimant is, at the minimum, able to perform simple, routine tasks.

Tr. 696.  The ALJ also stated that "at the hearing he was both eloquent and pleasant to engage with."  *Id*.  Plaintiff argues that the Ninth Circuit in *Garrison v. Colvin*, recognized significant differences between self-directed activities and the workplace environment and cautioned ALJs against finding that alleged limitations to workplace functions were inconsistent with everyday activities.  ECF No . 14 at 20-21 *citing* 759 F.3d 995, 1016 (9th Cir. 2014).  However, the ALJ in this case clearly set forth the requirements of driving and shopping and discussed how these requirements were consistent with the ability to perform simple, routine tasks.  Tr. 696.  Therefore, this is a specific finding of how the mental demands of these activities are transferable into a workplace setting under *Orn*, 495 F.3d at 639.

The ALJ's observation that Plaintiff was "eloquent and pleasant" at the hearing is not specific, clear and convincing.  The Ninth Circuit has generally disapproved of so-called "sit and squirm" jurisprudence such as this.  *See Perminter v. Heckler,* 765 F.2d 870, 872 (9th Cir. 1985).  However, the "inclusion of the ALJ's personal observations does not render the decision improper."  *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 959, 600 (9th Cir. 1999) (citations omitted).  In this case, there were other reasons provided that do meet the specific, clear and convincing standard.  *See supra*.  Therefore, if any error stems from this comment by the ALJ, it is undoubtedly harmless.  *See Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

# CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment so long as it is supported by substantial evidence. 42 U.S.C. § 405(g). After review, the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 14, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 16, is

   **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the **Defendant**, and **CLOSE** the file.

**DATED** November 3, 2021.

_____

LONNY R. SUKO
Senior United States District Judge

ORDER ~ 23